## BANK OFFICIAL BECOMES SURETY FOR SUMS OWING BY HIM OR FOR WHICH HE IS LIABLE.

Circuit Court of Cuyahoga County.

FRANK B. BROWN ET AL V. FRANK H. GINN, ASSIGNEE.*

Decided, April 11, 1907.

*Suretyship—One Promising to Pay a Definite Sum, Not a Surety as to Items Making Up that Sum—Corporation Agreeing to Sell Stock of Stockholder for Certain Amount, When Liable—Assignee of Contract Finishing it for Original Contractor May Compromise—Payments, How Applied on Claim Not Due.*

1. An officer of a banking institution who, to secure to the bank the payment of certain sums which he owes to the bank and other sums of the bank's money which he has loaned illegally, executes an instrument by which he obligates himself to pay to the bank a certain sum, which is the aggregate of a number of items, does not thereby become a surety as to the note of a third party which was one of the items included, and he is not relieved from liability on his own obligation to the amount of the note by the failure of the bank to proceed against the maker of the note upon written notice requesting it so to do.

2. A corporation which agrees to sell a stockholder's stock for him at the same price for which he is about to sell it through a broker, and which fails to sell it as agreed or give him any notice of its failure so to do, thereby becomes liable to account to him for the sum for which it agreed to sell it.

3. The assignee of a contract who agrees to finish the contract, pay the bills and account for the balance received, after payment of all expenses, may, in good faith, make certain repairs for which the contractor was not legally liable, where by so doing it avoids litigation and is enabled to reach an earlier settlement.

4. Payments made on a claim bearing interest, but not yet due, should be so applied as to extinguish a part of the principal and the interest which has accrued on the principal extinguished.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

The plaintiff in error, Frank B. Brown, was secretary and treasurer of the Arcade Savings Bank Company, which com-

*Affirmed without opinion, *Ginn, Assignee*, v. *Brown et al*, 80 Ohio State, 718.

pany afterward merged with and transferred all its assets and business to the Euclid Avenue Savings & Banking Company. The defendant in error, Frank H. Ginn, is assignee in trust for the benefit of the creditors of said last named company. On or about the 15th of December, 1893, it was ascertained that Brown had made loans of money of the banking company in a manner not authorized by the directors of the company, and in violation of his duty as such secretary and treasurer, and for such misuse of the money of the company the bank claimed to hold him personally liable. To partially secure the indebtedness thus claimed by the bank against Brown, he executed and delivered to Henry W. S. Wood, an officer of said company, his promissory note for $5,000, secured by mortgage on certain real estate. Later, and about the 3d of March, 1894, upon a further examination of Brown's transactions with the money of the banking company it was found that the total amount of the funds so misused by him was $21,824.07, which included the $5,000 evidenced by the note hereinbefore mentioned. On the date last named, it was agreed between Brown and the banking company that he was liable to the company in said larger sum to evidence which he executed to the company a written instrument, reading as follows:

"1894, March 3. To F. B. Brown, Trustee, overdraft $ 3,770.60

To F. B. Brown personal, overdraft    151.05

To interest paid Chase and others since Aug. 3d, 1895 . . . . . . . . .    801.29

To F. B. Brown, special, after omitting Garson item, $350.00 and Russell and Rice $200.00 to be hereafter considered . . . . . . . . . .    1,349.40

To shortage, as per books . . . . . . . .  10,644.46

To National Street Cleaning Co., overdraft . . . . . . . . . . . . . . . . . . .    158.14

To Sterling and Son . . . . . . . . . . . .   2,718.28

To W. G. Richardson . . . . . . . . . . . .    179.07

To Keyless Lock Co. . . . . . . . . . . . .    349.43

To Philadelphia Dairy . . . . . . . . . .   1,661.35
                                              ─────────
                                             $21,824.07

"CLEVELAND, OHIO, March 3, 1894.
"Due. the Arcade Savings Company, twenty-one thousand, eight hundred twenty four dollars and seven cents ($21,824.07), with interest at seven per cent. from March 3d, 1894. The above is subject to correction of all errors. Items not included in the above and not agreed upon are left for future liquidation.
"(Signed)   FRANK B. BROWN."

Afterwards Brown agreed with the banking company, that for the purpose of assisting in the payment of the indebtedness evidenced by the instrument last hereinbefore quoted, the bank should take upon itself the completion of certain contracts for street paving in the city of Cleveland, which had been undertaken by J. L. and H. L. Sterling, and which said Sterlings found themselves unable to complete.

Certain laborers and material-men had filed attested accounts against the Sterlings for materials furnished and labor performed in connection with this street paving, and a part of the arrangement between Brown and the banking company was that these attested accounts should be purchased by the banking company and in so far as it exceeded the amount which the banking company was required to expend in purchasing these attested accounts and in completing the Sterling contract for paving should be credited on the indebtedness of Brown to the banking company. This street paving was practically completed in 1894, but by the terms of the contract between the Sterlings and the city a certain percentage of the amount to be paid for the work was to be held until two years after the original completion of the work, to secure such repairs upon the pavements as should then appear as a result of any failure to do all the work as it should have been done in the first instance.

In 1896 the banking company did work upon the streets in connection with this paving, to repair defects which it was required to make under the original contract with the Sterlings, and a large amount of money came into the hands of the banking company for this work of completing the paving contracts. On the part of the banking company, however, it is claimed, that after applying all of the moneys received on the Sterling con-

tracts, in excess of expenditures of the bank in connection with these contracts, there still remained due from Brown to the bank a large amount of money, to recover which, Ginn, as assignee of the Euclid Avenue Savings & Banking Company, brought suit against Brown.

Brown, by his answer, claims that the moneys received on the Sterling contracts were, after deducting all credits to which the banking company would be entitled for expenditures made by it, not only enough to pay all his indebtedness to the banking company, but should leave a considerable amount which should be paid to him. This necessitated an accounting on the part of the banking company of its receipts and expenditures in connection with the Sterling contracts, and the case was referred to E. S. Cook, Esq., to hear the entire case, state an account, and report his findings of law and fact, together with the evidence to the court. This was done, and exceptions were filed both by Brown and the banking company to the report of the referee, and such exceptions were heard in the court of common pleas, in which some of the exceptions were sustained and others overruled, and a judgment entered for a considerable amount against Brown.

To this action of the court of common pleas both Brown and the assignee, Ginn, excepted, and Brown filed his petition in error in this court, and Ginn filed a cross-petition in error.

The matters brought to our attention on the part of Brown are:

First.    An item spoken of as the "Richardson notes."

It appears that among the items included in the obligation entered into by Brown for the payment of $21,824.07 were certain notes made by W. H. Richardson for moneys of the banking company which Brown had loaned to him without authority. These notes amounted to $1,500. They are not mentioned in the twenty-one thousand dollar contract by name, but are included, as appears by the evidence, in the item designated "to shortage as per books $10,644.46." Brown claims that he has the right to be credited with the amount of these notes for the reason that they were retained by the bank, and after their ma-

turity he served a notice in writing on the bank to proceed to collect the notes, which the bank failed to do or to make any effort to do.  Brown says that Richardson was entirely solvent when notice was so served ·upon the bank, and that if suit had then been brought by the bank against Richardson the amount owing by him upon these notes would have been collected.

His claim for a credit for these notes, or more properly, a reduction of the amount of his indebtedness to the extent of these notes, is based upon Section 5833 of the Revised Statutes of Ohio, which reads:

''A person bound as surety in a written instrument for the payment of money or other valuable thing, may if a right of action accrue thereon, require his creditor, by notice in writing, to commence an action on such instrument forthwith, against the principal debtor; and unless the creditor commence such action within a reasonable time thereafter, and proceed with due diligence, in the ordinary course of law to recover judgment against the principal debtor for· the money or other valuable thing due thereof, and to make, by execution the amount thereof, the creditor, or the assigns of such instrument, so failing to comply with the requisition of such surety shall thereby forfeit the right which he would otherwise have to demand and receive from such surety the amount due thereon.''

The court of common pleas held against the claim of Brown in this regard, for the reason that though there is a sense in which Brown may properly be said to have been a surety to the bank for the payment of these Richardson notes, yet he did not undertake in terms to become surety for notes, nor were these notes mentioned in the obligation which he assumed when he executed the twenty-one thousand 'dollar ·contract.  The Richardson notes are nowhere mentioned in the contract.  Brown took upon himself an original obligation to pay, among other items, an item hereinbefore mentioned, reading: ''To shortage as per books $10,644.46.''

There was nothing in this item to indicate that the Richardson notes were included, though, as a matter of fact they were included, and so, if Brown had to pay this item, he would doubtless have been subrogated to the rights of the bank on the Richardson notes, yet it was an original obligation on his part

to pay that entire item. In coming to this conclusion it is not necessary to adopt the reasoning of the court of common pleas entirely, nor is it necessary to adopt the reasoning of the case of *Morrison* v. *Bank*, 6 N. P., 7. And, although this remedial statute is to be liberally construed, it requires, as we think, a construction more than liberal to hold that Brown can be said to be in the language of the statute, "A person bound as surety in a written instrument for the payment of money." He was bound, as principal, for the payment of this entire amount of $10,644.46. If he paid it, as has already been said, he would be subrogated to the rights of the bank in the Richardson notes but not because he was bound in a written instrument in terms to pay those notes.

The next matter to which Brown takes exception in the judgment of the court of common pleas is connected with 30 shares of the stock of the banking company owned by Brown. These 30 shares had been pledged by Brown to the Produce Exchange Bank, to whom he delivered a certificate to secure an indebtedness of his to said last named bank.

The certificates for these shares had printed or engraved upon them a statement that they were pledged to the bank which issued them for any indebtedness which such bank might hold against the holder of these shares, and it was claimed on the part of the banking company that it, therefore, had a lien on these shares of stock superior to the lien of the Produce Exchange Bank.

Brown being desirous of availing himself of this stock for the purpose of paying so far as he could his indebtedness to the banking company, negotiated with the Produce Exchange Bank, and it was agreed some time in 1901, between Brown and the last named bank, that upon payment to it of $2,700 the indebtedness of that bank against Brown should be canceled and the stock released. Brown thereupon authorized a brokerage firm in this city to sell the stock, which was worth about 35 per cent. above par. Brown communicated to Stewart, an officer of the banking company, who had charge of its business, the fact that he had made this agreement with the Produce Exchange Bank

for $2,700 and that his stock was in the hands of the broker for sale. Stewart told him that the banking company could sell the stock for him and that if he would authorize them to make the sale, they had a customer who would take the stock at 35 per cent. above par, and that it would be better for him (Brown) to let the banking company make the sale, as he would thereby save the commission of the broker. To this Brown agreed, and the referee finds as a fact, that Brown was never notified that this sale had not been made. Brown says he supposed it had been made, and that he had been credited on his indebtedness to the banking company to the amount of these shares, above the $2,700 for which they were pledged to the Produce Exchange Bank. The court of common pleas held against the claim of Brown in this regard. In this we find error.

We think Brown was entitled to a credit upon his indebtedness to the banking company to the entire amount of these shares at 35 per cent. above par. If the bank had done what Stewart agreed with Brown to do, he would have had the benefit of these shares at the price named. True, $2,700 of the amount would have been paid to the Produce Exchange Bank, so that it would not have come into Brown's hands, but his indebtedness to that last named bank would have been paid; whereas by the course pursued Brown was left with the indebtedness to the Produce Exchange Bank still upon him. We think Brown had a right to rely upon the banking company making this sale at the stipulated price, or, upon failure to sell, to notify him forthwith, so that he might have made a sale, and failing to give him such notice, as the referee finds was the case, we hold that Brown was entitled, as above stated, to the amount of these shares at 35 per cent. above par.

Another item of the judgment of the court of common pleas complained of by Brown is with reference to 26 shares of stock which Stewart, representing the bank, reported to Brown that he had sold at the rate of 102, and for which Brown was given credit only at the rate of 100. This amounting to $52 should have been allowed to Brown.

Brown further complains that in making up the accounts between the bank and himself the court of common pleas erred in allowing a credit to the bank of $2,400 paid to Henry W. S. Wood, for superintending the work done by the banking company in the completion of the Sterling paving contracts. The referee had allowed on this claim $2,500. The evidence fairly shows that an agreement was made by the bank with Wood, which agreement was assented to by Brown, that Wood should be paid at the rate of $200 per month for his services in superintending this work. Under the evidence, we think it is fair to say that the entire time spent by Wood in 1894 and 1895 was substantially twelve months, and we affirm the judgment of the court of common pleas on this item.

Another item complained of by Brown is that there was allowed to the bank $525 for work done in connection with the finishing up and completing the repairs of the pavements in 1896; it being claimed on Brown's part that to this extent (that is $525) this work was rendered necessary by injury to the pavements done by the city in putting in sewers and other improvements and therefore the Sterlings would not have been bound, and therefore the banking company was not bound to have made these repairs. From the evidence, it seems reasonably clear that Brown's claim in regard to this fact is well founded, but it appears further that there was a considerable amount of money due from the city on these contracts. That to get this money without litigation with the city the bank was compelled to do this work, which really should have been done by the city. As a matter of fact the bank did make the expenditure, and, as we think, was fairly justified in making it rather than to be at the expense of litigation with the city, and to be out the money which was owing upon the paving contracts. That being so, the banking company might well have yielded on this point rather than to have been at the expense of litigation with the city, and it was really in the interests of Brown himself. We find no error in the judgment of the court of common pleas in this regard.

By his cross-petition in error the assignee raises the question of whether the court of common pleas was right in its holding in reference to a claim against one George Worden, trustee. The facts in connection with this claim as found by the referee are somewhat complicated, but from them we conclude that Worden, acting as a trustee for the bank, received money which should have been applied to the completion of the Sterling contracts, a part of which was not thus applied, and to the extent that it was not so applied, the bank and not Brown should be the loser; that is, that Brown should be entitled to a credit for the amount of such excess. We concur, therefore, in the finding of the court of common pleas in this regard, and if it becomes necessary, in order to ascertain this amount, to re-refer the case, it will be done. It is probable, however, that the parties can, upon this finding, agree upon the amount thus to be charged to the bank.

Another matter complained of is the one of applying credits given Brown in the accounting. The instrument for twenty-one thousand dollars and over sued upon is spoken of as a due bill, and but for the arrangements made subsequent to the execution and delivery of the instrument, was due and payable forthwith, that is, upon demand, and so to the extent that payments were made upon it prior to the contract between Brown and the banking company in reference to the Sterling contracts, whenever a payment was made upon it in excess of the interest which had accrued at the time of such payment, it was proper to add to the principal indebtedness the interest which had thus accrued at the time of such payment and then deduct therefrom the payment and compute interest on the balance at 7 per cent. until the time of the next payment. But, after the arrangement was made in reference to the Sterling paving contracts, the effect was to postpone the time when the dividend evidenced by this contract matured, and, as no interest would become due until the maturity of the principal indebtedness, it was not proper to pursue the course which was proper to pursue prior to the making of the agreement with reference to the Sterling contracts. Therefore, the payments made should

have been applied in reduction of the principal and the interest which had accrued upon such amount of the principal as was then paid. That is to say, if the payment was made of $535 at the end of one year, $500 of such payment should have been allowed in reduction of the principal and the remaining $35 should have been applied in payment of the interest which had accrued on the $500 of principal. In short the rule should have been adopted which is given in *Miami Export Company* v. *Bank of the United States,* 5 Ohio Reports, at page 260; the third clause of the syllabus reads:

"Payment made on an installment bearing interest, but not due, should be so applied as to extinguish a part of the principal and the interest which has accrued on the principal extinguished."

On September 29, 1894, subsequent to the giving of the twenty-one thousand obligation, Brown gave another note which reads:

"$6933.46                   CLEVELAND, OHIO, Sept. 29, 1894.
"On demand after date, I promise to pay to the order of the Arcade Savings and Banking Company, six thousand, nine hundred and thirty-three dollars and interest at 7 per cent.
"Value received.                           F. B. BROWN."

This note was not for an additional indebtedness, but as a further security for the indebtedness evidenced by the twenty-one thousand dollar contract. To the extent of this note 7 per cent. was to be paid on the indebtedness, even though a part of this note may have been made up of the interest which had already accrued, and to the extent that this requires a modification of the rule already stated in reference to the computation of interest, it will be modified, and not otherwise.

In this case we feel this court should proceed to enter a judgment which should have been entered in the court below, and when the proper computations shall have been made and accounts stated as indicated in this opinion, such judgment will be entered here.